McCABE & STEEN CONSTRUCTION CO. v. WILLIAM N. WILSON.

(Filed September 5, 1906,)

1. INSTRUCTIONS TO JURY—Exceptions to. Where several instructions to the jury are requested, and the court refuses to give any of them, a general exception to such refusal will not be sufficient on appeal to raise the correctness of such ruling in this court.

2. PLEADING—Verification of—When necessary. Where a petition alleges that one P., was defendant's superintendent of construction, and one F., was its foreman of a bridge gang, and where the statute provides that: "In all actions allegations of any appointment or authority, shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney." and the answer is an unverified general denial, coupled with a plea of contributory negligence, such pleading is not sufficient to entitle defendant to prove that P. was not its superintendent, and F. was not its foreman of a bridge gang.

3. MASTER AND SERVANT—Liability of. A railroad company is bound to provide suitable and safe material and structures in the construction of its road and appurtenances, and if from a defective construction thereof an injury happens to one of its servants, the company is liable therefor. The servant, on his part, undertakes the risks of the employment as far as they spring from defects incident to the service, but he does not take the risk of the negligence of the master itself. (Following U. P. Ry. Co. v. O' Brien, 161 U. S. 451.)

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before*
*B. F. Burwell, Trial Judge.*

*A. G. Mosley,* and *Louis B. Eppstein,* for plaintiff in error.

*Shartel, Keaton & Wells,* and *John H. Wright,* for defendant in error.

### STATEMENT OF FACTS.

This is an action wherein the defendant in error, Wm. N. Wilson, seeks to recover damages from the plaintiff in error, McCabe and Steen Construction Company, for injuries that he claims to have received while acting in the capacity of a locomotive fireman, for the said construction company. The defendant in error was a locomotive fireman, and for some months prior to the accident in question was firing on a construction engine. A new line of railroad was being constructed by the Oklahoma City and Western Railroad Company from Oklahoma City to Quanah, Texas. It was on this new line that Fireman Wilson was firing the engine of a construction train. The road had been constructed, and the steel laid to a point south or west of the Canadian river. The Canadian river had been bridged some months prior to the accident, and shortly before the accident a span or two of the bridge had been washed out. On the morning of June 9th, 1902, the construction train, with Tuck Waters as engineer and the defendant in error, William N. Wilson, as fireman, started out of Oklahoma City with a construction train, bearing cars of material and workmen, and headed for its day's labor upon the line of road. When the train arrived at the Canadian river, it stopped, and finding that the river was quite high, the engine was cut off from the rest of the train and the

engineer directed to go over the bridge and pick up a loaded car on the other side and bring it back. The engineer moved his engine onto the bridge, cautiously, and when approaching the center of the stream the bridge began to give away, and the engineer reversed his engine and ran back off the bridge. When this construction train arrived at the bridge it found Mr. Fallahay, the foreman in charge of the bridge work, there on the ground with a gang of men, and Mr. Pratt, the general superintendent of construction, was on the train in question, having come out on it, from Oklahoma City. After the engineer had backed his engine off the bridge, Mr. Fallahay and his bridge gang, assisted by Mr. Pratt, the superintendent, proceeded to repair the bridge, and after working upon the same for an hour and a half, constructing what is known as a "false span," they told the engineer and fireman that the bridge had been repaired, and directed them to proceed. The engineer then made specific inquiries both of the superintendent of the bridge gang and of Mr. Pratt, the genral superintendent, as to the sufficiency of the bridge, and informed them that he was not a bridge builder, and would have to rely upon them. They assured him that the bridge was all right, and directed him to go ahead. With this assurance the engineer and fireman took their places in the engine, and cautiously ran onto the bridge. When directly over the main channel of the river and over the "false span" that had been built, the bridge gave away and the engine, with the engineer and fireman, Wilson, went to the bottom of the river. By the exercise of the greatest effort, Fireman Wilson escaped with his life, but his legs were broken in two or three places, and he was otherwise very seriously and permanently injured. For the injuries received on this occasion,

the defendant in error, Wm. N. Wilson, brought this action in the court below, charging negligence on the part of the defendant railway company, and in the trial of the cause in the court below he recovered judgment for $3,000.00, and to reverse said judgment the plaintiff in error, the construction company, brings the case to this court.

Opinion of the court by

· GILLETTE, J.: The first assignment of error is the refusal of the court below to give the instructions presented and asked for by the defendant construction company. The record discloses the request for these instructions and then recites:

"Whereupon the court refused to give said instructions, or any of them, to the jury, to which ruling and refusal of the court the defendant then and there duly excepted."

. Our statute prescribed the method of taking exceptions to instructions, and in order to make up a record preserving exceptions to refused instructions, there must be a substantial compliance with the provisions of the statute, and it is claimed, by the defendant in error in this case, that the general exception to the refusal of the instructions, as above set forth, does not amount to a substantial compliance with the statute. Our statute was taken from Kansas, and before we adopted it, the supreme court of Kansas had construed the same, and that construction is presumed to have been adopted here, with the adoption of the Kansas code, and in addition to that the construction placed upon the statute by the supreme court of Kansas meets our hearty endorsement.

"Where a party asks the court to give several separate written instructions to the jury, and the court refuses to give any of them, and a general exception is taken to such re-

fusal: *Held:* That the exception is not sufficient." *Bailey v. Dodge,* Kansas 72.

The exception that was under consideration in the Kansas cases above cited, is so nearly like the one in question here that it is a case exactly in point. It is as follows:

"The above and foregoing are all the instructions asked by the defendant, each and all of which were refused by the court, and to such ruling and refusal said defendant duly excepted."

The supreme court of Kansas in the above cited case held such a general exception insufficient, and that under it, the error of refusing the instructions requested was not before the court. To the same effect see the case of *Flemming v. Latham,* 48 Kans. 773. Though not exactly in point in this case, we think our own court has fairly indicated its position by its expression as contained in *Everett v. Aikens,* 8 Okla. 184; *Glaser, et al. v. Glaser, et al.,* 13 Okla. 389. We are clearly of the opinion that the general exception to the instructions refused is not sufficient to present the error complained of in refusing them, to this court.

The next ground of complaint is that the court below erred in refusing to allow the defendant construction company to prove that Pratt was not its superintendent of construction, and that Fallahay was not its foreman of the bridge gang, and that the plaintiff, Wm. N. Wilson, was not employed by the defendant construction company, and that they were the servants in the employ of McCabe & Steen. The rulings complained of arise from the condition of the pleadings. The petition of the plaintiff contains the allegations that said J. Pratt was the general superintendent of construction for defendant, and that said Fallahay was the foreman

of the bridge gang for the defendant. It also contains the allegation that the plaintiff was employed by said defendant, through J. Pratt, the general superintendent of construction of defendant. The answer of defendant contains: First, an unverified general denial; Second, an allegation that the injury, if sustained at all by plaintiff, which is denied, was caused and brought about by the carelessness and negligence of a fellow servant of plaintiff, and that defendant·is not therefore liable; Third, a special allegation that if the plaintiff was injured at all, which is denied, the said injury so received by him was not due to the negligence or want of care of this defendant, or any of its employes, but was due to one of the risks assumed by the plaintiff in his contract of employment with this defendant, and for which this defendant is in no way liable, and fourth, a plea of contributory negligence. Under the pleadings, as thus made up, the court instructed the jury that the defendant was estopped from claiming that Fallahay, the foreman of the bridge gang; Pratt, the general superintendent of construction, and the plaintiff, were in the employ of the defendant. Concerning the verification of pleadings section 3986 of our statute provides:

"In all actions allegations of the execution of written instruments and the endorsements thereon, * * * or of any appointment or authority, shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney."

As the petition of plaintiff clearly contains the allegation of the appointment and authority of both J. Pratt as a general superintendent of construction, and Fallahay, as foreman of the bridge gang of the defendant construction

company, and as the denials of such allegations of appointment and authority are not verified, we are clearly of the opinion that they are taken as true under said statute. Had the court below by said instruction gone so far as to say that under said above quoted section of our statute the allegations that plaintiff was employed by the defendant, amounted to an allegation of appointment or authority, and was therefore taken as true, the denial of it not being verified, we would be inclined to dissent therefrom, but as the answer also contains the allegation that if the plaintiff was injured it was due to one of the risks assumed by him in his contract of employment with this defendant, we think it was a clear admission that there was a contract of employment between the plaintiff and defendant construction company at the time of the injury, and under the pleadings as made up; and the admissions contained in defendant's answer, we think the court was amply justified in giving the instruction complained of.

This brings us to the consideration of the valid question in the case, and the one that finally determines the real rights of the parties to this action, on its merits. That the bridge was repaired by the defendant construction company under the supervision and direction of J. Pratt, general superintendent of construction, and Fallahay, foreman of the bridge gang, if not admitted, has been fully established by the evidence in the case, and is not now before us. It is the contention of the defendant construction company that J. Pratt, general superintendent of construction, and Fallahay, foreman of the bridge gang, and the plaintiff, Wm. N. Wilson, as locomotive fireman, were all fellow servants in the general employment of building a railroad, and incidentally in repairing this bridge, and being fellow servants, the master

cannot be held liable for any injury plaintiff Wilson may have sustained by reason of the carelessness and negligence of his co-employes and fellow servants in this general work. On the other hand, it is contended by plaintiff that it is the positive duty of the master to use reasonable care in providing safe tools, machinery and appliances to work with; a safe place to work in, and safe materials and structures to work on, and that a bridge such as the one falling in this case, forms a part of the working place of locomotive firemen, and being such, it is the duty of the master to keep it in safe repair for the servant's use, and that the rule that the master is not liable for an injury which is the result of the carelessness and negligence of a fellow servant, has no application where the injury complained of, as in this case, is brought about by the master's negligence of a duty he owes personally to the servant, and which he cannot, under the law, delegate to an agent or subordinate without being personally liable for the carelessness and negligence of such agent or subordinate. The law that it is the master's positive duty to use reasonable care in providing safe tools, machinery, and appliances to work with, a safe place to work in and safe materials and structures to work on, is the unquestioned and well settled law of the land, and there are few if any exceptions to it. The application of this law to a given state of facts has been a matter of great difficulty, and has given rise to a very great diversity of opinion, and the courts of the land are hopelessly divided upon the question. In all these cases the "stumbling block" has arisen over the application of the law, which is clear and well settled, to the facts of the individual cases which have arisen in the courts of the land. The master is not liable for injuries the servant may receive

which are incident to the employment, and where the master has fully discharged his duty to the servant and the servant is injured by the negligence of a fellow servant, the master is not liable for such injury. It is incident to the employment, and is an assumed risk. 100 U. S. 213. But there is one important and far-reaching exception to this rule in this, that it is the positive duty of the master to use reasonable care in providing safe tools, machinery and appliances to work with, a safe place to work in, and safe materials and structures to work on. *The Ruemmeli-Braun Co. v. James W. Cahill,* 14 Okla. 422. The application of this rule and the exceptions to it, has, as before stated, given rise to a very great diversity of opinion. In many instances courts of high rank stand squarely opposite to each other upon essentially the same state of facts. It is not our purpose here, nor would we be equal to the task of bringing order out of this chaos. An extended and careful examination of this case, and the law applicable thereto, has convinced us that the court below committed no error in the trial of the case, and that the judgment should stand.

It has been determined in this territory in accordance with the well settled law, that where the relation of fellow servants exist, there can be no recovery for injury the result of the negligence or misconduct of the fellow servant, where the negligence or misconduct does not relate to a duty the master owes the servant and that he cannot delegate to an agent or subordinate. *Ruemmeli-Braun Co. v. Cahill,* 14 Okla. 432. While in the above case it was, under the facts, held that the injury was caused by the negligence of a fellow servant, Justice Burwell also recognized the master's liability to the servant for the neglect of any duty which the

master owes to the servant personally, and in this connection he uses this language:

"It is the positive duty of the master to use reasonable care in providing safe tools, machinery and appliances to work with; a safe place to work in, safe materials to work on, and safe fellow servants and co-employes and if the business is such as to require it, to provide safe and proper rules and regulations for the conducting of the same. Negligence in the performance of any of these positive duties will render the master liable without regard to the standing or authority of the employe through whose fault the injury is occasioned."

As above stated, it is now the fundamental and well settled law of the land that it is the duty of the master to furnish the servant safe tools, materials and structures to work with and upon; and to keep them in proper repair. He cannot delegate these duties to an agent or subordinate, so as to relieve himself from personal liability. In cases of great railroad and other corporations, the master must, of necessity, delegate the performance of such duties to subordinates, but this does not, in any sense, change the master's liability. He remains responsible to all his servants for the negligent acts of such subordinates in regard to these imposed obligations of the master to his servant in every particular, and to the same extent as if the master himself had acted. This rule applies alike when the master is an individual or is a corporation that is capable of acting by its agents and employes only. A person entering the service of a corporation has a right to assume that it, as the master, has and will continue to discharge its obligations as such master. The master is not called upon, of course, to warrant the safety of the employe. The employe assumes all risks incident to the employment. The greater the danger of the employment, the

greater the risk undertaken by the employe; but the risk or hazard so undertaken extends only so far as it is incident to the employment undertaken; but the employe does not assume and cannot be held to have assumed risks of the negligence of the master. The master, whether a corporation or an individual, is bound to exercise such care as is reasonably demanded in providing proper tools, materials, structures, and safe places to work in, and to keep road beds, tracks, and bridges for the use of its servants, in good condition and safe repair. When this has been done the master has discharged his duty, and if the servant is then injured, such injury will be regarded as an incident to his employment, and if the servant is injured, such injury is clearly an assumed risk, and this is true though the injury be caused by the negligence of a fellow servant.

As stated it is the duty of the master to furnish a safe place for the servant to work and safe structures to work upon. The plaintiff in this case was injured by his engine falling through a defective bridge, and the question arises to whether or not a bridge is a place where a locomotive fireman is called upon to work so that the duty devolves upon the master to keep the place in safe condition for his use.

"Bridges form part of a working place of train men and some other classes of railroad employes, and, generally, the rules which prescribe the duty of the employer as to the safety of the working place apply to bridges." Sec. 1171, Elliott on Railroads; 21 Oregon, 136; 28 S. W. 711 (Tex.); 67 Fed. 524, 245 N. Y. 283.

"While it is true that a railroad company is not liable for an injury to its servant occasioned by the negligence of a fellow servant in the same line of employment, yet this rule has no application to an injury caused by defects in the ma-

chinery of the company, its tracks or bridges, which it might have known and provided against by the exercise of the highest care and diligence, it being the duty of such companies to furnish their servants safe materials and structures, and keep them in proper repair.

"Where a servant of a railway company is injured or killed in consequence of the giving way of a wooden bridge, which is defective through age and exposure to the weather, the company cannot escape liability from the fact that the bridge was constructed properly in the first place, and it employed skillful and competent subordinates to inspect and repair its bridges. Ordinary prudence in such a case is not sufficient, but the highest degree of diligence consistent with the practical operation of the road is required.

" * * * It is further urged by appellants, if the death of Conroy (the fireman on the engine) resulted from the negligence of the superintendent of the bridge department, appellants are not liable, because deceased and the superintendent were fellow servants in the same general undertaking. It is unnecessary to comment on the many cases cited by appellants in support of the proposition that the doctrine of *respondeat superior* has no application here. The principles which ruled this case have been fully stated in *N. W. R. R. Co. v. Sweet, Admr.* 45 Ill. 201, and *Ill. Cen. R. R. Co. v. Welch,* 52 Ill. 183, in which it was held that railroad companies are bound to furnish their servants safe material and structures, and to keep them in proper repair; and a person entering the service of a railroad company has a right to presume that, in these respects, the company has discharged its obligation. * * * This certainly is a wholesome rule as well for the public as for the companies, for it is to their interest to have their road and appliances safe and in the best condition." *Toledo, Peoria & Warsaw Ry. Co. v. Conroy,* 68 Ill. 560.

In a recent case involving facts approaching this case, the United States supreme court, speaking through Chief

Justice Fuller, in *Union Pac. Ry. Co. v. O'Brien*, 161 U. S. used the following language:

"* * * The general rule undoubtedly is that a railroad company is bound to provide suitable and safe materials and structures in the construction of its road and appurtenances, and if from a defective construction thereof an injury happen to one of its servants, the company is liable for the injury sustained. The servant undertakes the risks of the employment as far as they spring from defects incident to the service, but he does not take the risks of the negligence of the master itself. The master is not to be held as guaranteeing or warranting absolute safety under all circumstances, but it is bound to exercise the care which the exigency reasonably demands in furnishing proper roadbed, track, and other structure, including sufficient culverts for the escape of water collected and accumulated by its embankments and excavations." 161 U. S. 451, *Hough v. Ry. Co.*, 100 U. S. 213; *Texas & Pac. Ry. Co. v. Cox*, 145 U. S. 593 *Gardner v. Mich. Cen. Ry.*, 150 U. S. 349, 359; *U. P. Ry. v. Daniels*, 152 U. S. 684; *Chicago & N. W. R. R. v. Sweet*, 45 Ill. 197; *T. & P. Ry. v. Conroy*, 68 Ill. 560; *Stoger v. Iron Mountain Ry.*, 91 Mo. 409; *Paulmier v. Erie R. R.*, 34 N. J. Law, 151; *Snow v. Housatonic R. R. Co.*, 8 Allen 441; *Huddleston v. Lowell Machine Shops*, 106 Mass. 282; *Smith v. Harlem R. R. Co.*, 19 N. Y. 127; *Patterson v. Connelsville R. R. Co.*, 76 Penn. St. 389.

"The breaking of a railroad trestle by a flood and the drift carried thereby renders the railway company liable to an employee injured thereby on the ground of negligence, if the character of the flood and drift is such as might reasonably have been anticipated." *Terre Haute and Indianapolis Ry. Co. v. Fowler, Admr.* (Ind.), 48 L. R. A. 531.

It is needless to further multiply citations.

The contention is also made by the plaintiff in error that defendant in error, Wm. N. Wilson, was guilty of con-

tributory negligence that clearly bars his right to recover in this case, because he recklessly ventured upon the bridge in question, knowing of its defective condition. We cannot endorse this view. When the engine was cut off from the train and run out onto the bridge, it was discovered that the bridge was yielding under the weight of the engine, and the engineer reversed and ran his engine back off the bridge. Then Fallahay, the foreman of the bridge gang, J. Pratt, the superintendent of construction, with a force of men proceeded to repair the bridge by building, as we have before stated, what is known in bridge construction as a "false span," and when this was completed the engineer was assured that the bridge was safe for use, and he was advised and directed to go upon it with his engine; and of this fact the fireman Wilson was also informed, and he took his place beside the engineer and went with him onto the defective bridge. Neither the engineer nor the fireman were bridge builders, and they had no special knowledge of such department. They were advised by the foreman of the bridge gang and by the superintendent of construction that they had properly and safely repaired the bridge, and upon that assurance they went onto it with their engine. Under these circumstances the question of contributory negligence became and was a pure question of fact for the jury, and having been submitted to the jury under proper instructions we think the finding against the construction company is conclusive upon this question.    65 Kan. 857: 100 U. S. 213; 69 Kan. 738; 161 U. S. 451; 48 L. R. A. 531, and cases there cited.

It is also contended by the plaintiff in error that the injury sustained by defendant in error, Wilson, was an incident to the hazardous employment he had undertaken, and

therefore clearly an assumed risk, for which he has no remedy under the law. As before stated, the employee assumes all risks incident to the employment, but the risks or hazards so undertaken extend only so far as they are incident to the employment. The employee does not assume and cannot be held to have assumed risks of the negligence of the master. This action was begun and has been prosecuted upon the claim of the negligence of the construction company in the premises, and plaintiff has recovered upon that theory. The question of assumed risks, under all the facts in the case, like the question of contributory negligence, was properly submitted to the jury, and has been determined against the plaintiff in error, and we cannot say as a matter of law that the finding of the jury is erroneous, and therefore it should stand. 65 Kans. 857; 69 Kans 783, and cases cited.

After a careful consideration of the case, we are clear that a railroad bridge such as the one falling in this case is a place or structure where a locomotive fireman is called upon to work in the ordinary discharge of his duty, and therefore it was the duty of the master to so construct or reconstruct the same as that it would at all times be safe for the use of its servant, and to keep the same in repair. The bridge in question was clearly defective, and the construction company cannot be heard to say, under the evidence and law, that it is not liable. The construction company owed its servant, Wm. N. Wilson, a personal duty, under the law, of keeping this bridge in reasonably safe repair for Wilson's use. It failed in this. Its liability has been clearly shown, and the judgment of the court below is affirmed.

Burwell, J., who presided in the court below, not sitting; all the other Justices concurring.