# PRODUCERS' OIL CO. v. EATON.

No. 3175.  Opinion Filed August 25, 1914.

Rehearing Denied September 22, 1914.

(143 Pac. 9.)

1. **MASTER AND SERVANT—Injury to Servant—Liability of Master.** An employer owes his employee the duty to furnish him a reasonably safe place in which and reasonably safe tools and appliances with which to work, and is liable for injuries proximately resulting to him from neglect to do so, unless the employee has assumed the risk of the same, or has contributed to the negligence which resulted in such injuries.

2. **SAME—Negligence—Question for Jury.** Where the evidence reasonably tends to show that an employer is guilty of negligence in that he has not furnished his employee a reasonably safe appliance with which to work, it is for the jury to determine whether the employer has been guilty of such negligence.

3. **NEGLIGENCE—Extent of Liability—Natural Consequences.** A person guilty of negligence involving a breach of his duty should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the facts and circumstances which in fact exist, whether they could have been ascertained by reasonable diligence or not, would have thought at the time of the negligent act reasonably possible to follow, if they had been suggested to his mind.

4. **MASTER AND SERVANT—Injury to Servant—Question for Jury.** A controverted and open question as to whether a negligent act involving a breach of duty on the part of an employer to his employee is the proximate cause of the latter's injury is one of fact for the jury, if there is any evidence whatever reasonably tending to prove the same.

5. **EVIDENCE—Opinions of Experts—Probative Effect.** A jury cannot be instructed to wholly disregard the admissible opinions of expert witnesses, nor that no reliance is to be placed on or aid gained from the same; but it is not error to instruct them that they may disregard such evidence if they deem it unreasonable or not entitled to belief because of other and contradicting evidence from witnesses claiming positive knowledge.

6. **APPEAL AND ERROR—Harmless Error—Instructions.** An instruction which states the conditions precedent to plaintiff's right of recovery more strongly than necessary against him, and so as to require the jury to find facts in line with, but somewhat beyond, the true conditions precedent and the evidence in the case, but which is not calculated to confuse or mis-

lead the jury, does not appear prejudicial to the defendant, and will not require a reversal of the case.

7.    **SAME—Argument of Counsel.** The erroneous refusal of a trial court to sustain an objection to improper argument will not require a reversal of a case unless the same has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right.

(Syllabus by Thacker, C.)

*Error from District Court, Creek County;*
*Wade S. Stanfield, Judge.*

Action by Alva C. Eaton against the Producers' Oil Company, for personal injury. Judgment for plaintiff, and defendant brings error. Affirmed.

*W. S. Barrett* and *Dillard & Blake,* for plaintiff in error.

*W. G. Fairchild, Josiah G. Davis,* and *J. B. Rutherford,* for defendant in error.

Opinion by THACKER, C. Plaintiff in error will be designated as defendant, and defendant in error as plaintiff, in accord with their respective titles in the trial court. Plaintiff recovered judgment for $2,000 as damages upon the ground of defendant's alleged negligence resulting in personal injuries to plaintiff while he, as employee, was serving defendant, as employer, at the latter's oil well No. 4.

On October 4, 1910, plaintiff and one Weaver, who was also an employee of the defendant, were engaged in drawing "sucker rods" for defendant from its said oil well, the plaintiff working as a "roustabout" subject to the orders of Weaver, another "roustabout." An engine, operated by Weaver, was used in this work. A very large rope, known as a "bull rope," was used as a belt to transmit power and turn a "bull wheel" that turned an axis connected with other machinery used in lowering into and lifting from said well iron rods known as "sucker rods," etc. On the opposite end of this axis was a brake wheel, partially around which was a steel band operated by a hand lever and used as a brake to stop and regulate the descent of "sucker rods," etc., into the well.

This hand lever was an upright iron bar about five feet long and, when pushed or pulled over toward the floor of the derrick, brought said steel brake band in contact with said "bull wheel," the revolutions of the wheel after contact aiding in tightening the brake band upon itself. Plaintiff was in a stooping position engaged in some part of the work relating to the lifting of said "sucker rods" from the well, with his back or side toward the said "bull wheel" and the said hand lever, when he heard in that direction a commotion, followed by an exclamation of Weaver to him to "get to the brake." When plaintiff straightened up and had seen the rapid revolutions of the "bull wheel," indicating that the "sucker rods" were descending without restraint into the well, and that they and the well would likely be damaged if such descent was not stopped before the bottom of the well was reached. Weaver again exclaimed, "Get to the brake!" Plaintiff, evidently realizing that he must act quickly to prevent the impending danger of serious injury to rods and well, seized the lever and brought the brake into contact with the brake wheel, the speedy revolutions of which caused the brake to tighten so quickly that the lever went down to the floor so suddenly as to escape from plaintiff's hand, and in so doing threw him in such position that when it recoiled it struck him on the side of his face, fracturing one or more bones perhaps causing a concussion of the brain and other injuries, from which he had not recovered at the time of the trial, and which may have been permanent in some respect; apparently that portion of his brain which affects his speech had suffered some injury. The "bull rope" was old and worn, and the cause of the sudden descent of the "sucker rods" into the well was the breaking of the tie which fastened together the ends of this old and worn "bull rope." It appears that plaintiff, who had only been working at the well about an hour and a half immediately prior to his injuries, and not before within the last past two months, had no knowledge of the condition of such tie except as indicated by the old and worn appearance of the "bull rope" as a whole. It seems clear that there was evidence reason-

ably tending to show defendant guilty of negligence in respect to the defective condition of the tie in the rope, which the jury found. And defendant was bound to furnish plaintiff a reasonably safe place in which to work and reasonably safe tools and appliances with which to do so. *Chicago, R. I. & P. Ry. Co. v. Duran,* 38 Okla., 719, 134 Pac. 876; *Dewey Portland Cement Co. v. Blunt,* 38 Okla. 182, 132 Pac. 659; *Chicago, R. I. & P. Ry. Co. v. McIntire,* 29 Okla. 797, 119 Pac. 1008; *Choctaw Electric Co. v. Clark,* 28 Okla. 399, 114 Pac. 730; *McCabe & Steen Construction Co. v. Wilson,* 17 Okla. 355, 87 Pac. 320; *Neeley v. Southwestern Cotton Seed Oil Co.,* 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145.

Was there any evidence in this case reasonably tending to show that the negligence and consequent breach of duty on the part of the defendant in respect to the defective condition of the tie in the "bull rope" was the proximate cause of the injuries for which damages were received, so as to authorize the submission of this case to the jury? We think there was.

"The correct rule seems to be that a person guilty of negligence or an omission of duty should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact exist, whether they could have been ascertained by reasonable diligence or not, would have thought at the time of the negligent act as reasonably possible to follow, if they had been suggested to his mind."

*Chicago, R. I. & P. Ry. Co. v. Duran,* 38 Okla. 719, 134 Pac. 876; *Chicago, R. I. & P. Ry. Co. v. Beatty,* 27 Okla. 844, 116 Pac. 171; *Hughes v. C., R. I. & P. Ry. Co.,* 35 Okla. 482, 130 Pac. 591. Also, see *Bales v. McConnell,* 27 Okla. 407, 112 Pac. 978, 40 L. R. A. (N. S.) 940; *Waters-Pierce Oil Co. v. Deselms,* 212 U. S. 159, 29 Sup. Ct. 270, 53 L. Ed. 453.

True, the act of plaintiff in applying the brake, if not the manner in which he applied the same, was an immediate cause of his injury; but we do not think it can be said as a matter of law that any act or acts chargeable to him constitute such an independent intervening cause as to sever the causal connection between the defective condition of the rope, or tie, which proved to be the

weakest part thereof, and the injury suffered by plaintiff when tested by the foregoing rule. His act in applying the brake in the emergency which arose, and that, too, in response to the directions of Weaver, who was his superior in position at the time, was natural and such act, as well as the resultant injury to him, should have been thought of as reasonably possible by defendant, if it had been fully acquainted with all the circumstances which in fact existed.

A controverted and open question as to whether a negligent act involving a breach of duty on the part of an employer to his employee is the proximate cause of the latter's injury is one of fact for the jury, if there is any evidence whatever reasonably tending to prove the same. *St. Louis & S. F. R. Co. v. Darnell,* 42 Okla. 394, 141 Pac. 785; *Atchison, T. & S. F. Ry. Co. v. St. L. & S. F. R. Co.,* 41 Okla. 80, 135 Pac. 353, 48 L. R. A. (N. S.) 509; *St. Louis & S. F. R. Co. v. Davis,* 37 Okla. 340, 132 Pac. 337; *Petroleum Iron Works Co. v. Wantland,* 28 Okla. 481, 114 Pac. 717.

The court instructed the jury that, although the testimony of experts was proper and competent, the jurors were not bound "to accept their opinions as to what the facts are, in the face of the testimony of witnesses claiming to have actual knowledge of the facts," but that it was within the province of the jury to say what weight should be given such opinions. Defendant complains that this was an instruction upon the weight of the evidence, and "did not place the testimony of the experts properly before the jury," but we do not think the instruction vulnerable to this complaint. This instruction assumes, and there appears to be no denial, that there was evidence other than opinion evidence which tended to contradict the latter; and, if so, the reference made to it is not reversible error, as the jury ordinarily is not bound to accept as true and correct the opinion evidence of experts, even where the same stands uncontradicted. A jury is bound to consider such evidence and cannot properly be instructed that no reliance is to be placed on or aid to be gained from it, or that it may be wholly disregard-

ed; but the jury may be instructed that they may disregard such evidence if they deem it unreasonable, or, in view of other contradicting evidence, not entitled to belief. 2 Jones, Commentaries on Evidence, secs. 390-392; 3 The Modern Law of Evidence, Chamberlayne, sec. 2552; 3 Wigmore on Evidence, secs. 1917-1924.

Defendant also complains of an instruction which, among other conditions precedent to plaintiff's right to recover, assumed that the jury might find from the evidence: (1) That plaintiff was subject to Weaver's orders, and "necessarily" had to obey them; (2) that plaintiff's injuries were caused by the breaking of the "bull-rope" tie; (3) that the defective condition of said tie was known to defendant; (4) that it was imposible to hold the hand lever used by plaintiff in applying the brake, and that he exercised reasonable care in seizing the lever and applying the brake—and informed the jury that their verdict should be for the plaintiff if they found the existence of all such conditions to his right to such verdict.

In support of this complaint it is urged, among other things of less merit, that there was no evidence tending to show the existence of any one of the first three specified facts which this instruction assumed the jury might find, but, if the evidence was insufficient to warrant any such finding, the instruction, to an extent corresponding to such insufficiency, required the jury to find more than was necessary as conditions precedent to plaintiff's right of recovery, and the error, if any, does not appear prejudicial to defendant; the instruction being in line with and not much, if any, beyond the evidence, and not calculated to confuse or mislead the jury. No other question in respect to this instruction seems to merit discussion; and, the questions of assumption of risk and contributory negligence having been left to the jury, what has already been said as to proximate cause would seem to suffice as answers to other errors urged in respect to the instructions.

Perhaps, the most serious question of error presented for our

consideration is the overruling by the court of defendant's objection to the three following several reprehensible statements in the argument of the counsel for plaintiff:

(1) "This defendant corporation owns over 200 producing oil wells in the Glenn Pool Field, and for the purpose of increasing their dividends, they use defective and secondhand materials and sacrifice human lives [argument of Mr. Davis.]"

(2) "Remember, gentlemen of the jury, that on one side of this case is a human being, and on the other side is a heartless, soulless, bloodless corporation [argument of Mr. Fairchild]."

(3) "When I say Weaver, I refer to this same heartless, soulless, and bloodless corporation for whom said Weaver was at that time acting [argument of Mr. Fairchild]."

This language had no logical bearing upon any issue that the jury was authorized to determine, nor upon any question connected with or relating to any issue presented to the jury in this case by the pleadings, evidence, or instructions, and it was improper. Its probable effect, however, would seem to be somewhat uncertain. We can easily understand how jurors suceptible to the influence of the bias and prejudice it was apparently intended to arouse might be thus inclined to favor the plaintiff and be unduly prejudiced against the defendant, while other jurors whose sensibilities would, as they should, resent such an argument might be thus unduly inclined to favor the defendant and be prejudiced against the plaintiff, and still others might not be influenced either way by it; but the trial court undoubtedly should have sustained the objection to such argument, as, at least, a gross impropriety, and, in the one instance in which there was a request, should have instructed the jury not to consider the same. Ordinarily such perversion of argument would require a reversal and new trial. 38 Cyc. 1499-1500, and notes thereto. If, in the amount of the verdict or elsewhere, there was any evidence of the influence of this argument to the prejudice of the defendant, we should be disposed to reverse and remand this case because of this error of the trial court; but, in view of all the facts in this case, it does not appear that the error "has probably resulted in a miscarriage

of justice, or constitutes a substantial violation of a constitutional or statutory right." See section 4018, St. Okla. 1893, same being section 4791, Rev. Laws 1910; section 4194, St. Okla. 1893, same being section 5031, Rev. Laws 1910; and section 5765, St. Okla. 1890, same being substantially identical in this respect with section 6005, Rev. Laws 1910.

For the reasons stated, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.