## CUSHING GASOLINE CO. v. HUTCHINS.

No. 11387—Opinion Filed Oct. 16, 1923.

**1. Pleading—Effect of Amendment—Admissibility of Original Petition as Admission.**

When an amended petition is filed in a case and no part of the original petition is referred to, or adopted into the amended petition, such original petition is superseded and is no part of the record, and while it may be introduced in evidence by the adverse party, the same as any other writing signed by the party, subject to be explained, its contents cannot be considered upon the trial, either as a part of the record or as admissions of the plaintiff, unless introduced in evidence.

**2. Appeal and Error—Right to Review— Waiver of Action on Motion to Reopen Case.**

A party who permits a case to proceed to judgment without having the court act upon a motion made by him must be deemed to have waived his right to have the same acted upon; and this court will not consider an alleged error of the trial court in refusing to sustain a motion to reopen the case and introduce further evidence unless the record affirmatively shows that the motion was acted upon by the court and exceptions taken thereto by the complaining party.

**3. Master and Servant—Injuries to Servant —Negligence—Unsafe Working Place.**

It is the duty of the master to furnish his servant with a reasonably safe place to work, and where the master fails to discharge such duty and the same constitutes the proximate cause of an injury to the servant, the master will be held liable for damages.

**4. Same—Injuries to Oil Well Worker.**

Where the master sends a servant to work on a "tubing board" which the master, either in person or through an employe, undertook to install or supervise the installation thereof, the master is answerable for injuries sustained by said servant, caused by the negligence of the master, or by the negligence of a fellow servant, in installing said "tubing board", if such negligence is the proximate cause of said injury.

**5. Negligence—"Proximate Cause."**

The proximate cause is the efficient cause, the one that necessarily sets other causes in operation. The causes that are merely incidental or instruments of a superior controlling agency are not the proximate causes and the responsible ones, though they may be nearer in time to the result. It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster.

**6. Master and Servant—Proximate Cause of Injury—Jury Question.**

The question as to whether a negligent act involving a breach of duty on the part of the master to his servant is the proximate cause of the servant's injury, is one of fact for the jury, if there is any evidence reasonably tending to prove the same:

**7. Same—Liability—Concurring Negligence of Master and Fellow Servant.**

The master is liable for injuries to a servant due to the concurring negligence of the master and a fellow servant in cases where the injury would probably not have occurred but for the negligence of the master:

**8. Same—Care and Prudence Required.**

A person guilty of negligence involving a breach of his duty should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the facts and circumstances which in fact exist, whether they could have been ascertained by reasonable diligence or not, would have thought of at the time of the negligent act as reasonably possible to follow, if they had been suggested to his mind.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by Mrs. C. V. Hutchins against the Cushing Gasoline Company, a corporation. Judgment for the plaintiff, and defendant brings error. Affirmed

J. P. O'Meara, A. F. Moss, L. G. Owen, and J. C. Farmer, for plaintiff in error.

Thrift & Davenport and Gaylord R. Wilcox, for defendant in error.

Opinion by JARMAN, C. This action was commenced in the district court of Creek county by Mrs. C. V. Hutchins to recover, on her own behalf and for her minor children, damages against the Cushing Gasoline Company for the death of C. V. Hutchins, her husband and the father of said minor children. A judgment was procured in the sum of $15,000, from which the defendant brings error.

The deceased was a member of a "tubing crew," engaged in pulling or extracting tubing from an oil well. The "tubing crew," consisting of four men, was in charge of, and under the direction or supervision of Mr. Becker, as foreman of the lease on which this well is located; each member of the crew had a specific work to perform—one had charge of the engine, another worked on the platform of the derrick and connected and disconnected the wire cable from the "tubing" and unscrewed the "tubing" as it was being pulled, another had charge of the brake on the "bull wheel" about which the wire cable was wound, the function of the brake being to stop the "bull wheel" when it became necessary and thereby stop the ascension of the tubing as it was being taken from the well, and the deceased was working on the "tubing board," which consisted of two planks, each being about 12 inches wide and fastened together with cleats and either end of the "tubing board" rested upon "girts," which are timbers attached horizontally to the corner posts of the derrick. There was a piece of timber nailed to the "tubing board" which projected or extended over and beyond the edge of the "tubing board" and on the side thereof next to the wire

cable, which extended perpendicularly from the "tubing board" to the "crown wheel" at the top of the derrick and passed over the "crown wheel" down to the "bull wheel" on which it was wound, and this piece of projecting timber is known as a "finger board." The "tubing board" was about 35 feet above the platform of the derrick and it was the duty of the deceased to stand on the "tubing board" and lean the joints of tubing, as they were pulled from the well and disconnected, back against the "finger board" to keep them from falling. When the "tubing crew" went to the well to pull this tubing, the regular "tubing board" man was sick and unable to work, and the foreman directed the deceased to go to work on the "tubing board," and he, together with Mr. Whitner, who worked on the platform, ascended the derrick, and acting under the direction of the foreman, moved the "tubing board" out from against the corner posts of the derrick to a point more nearly over the well. The deceased and Whitner nailed the "finger board" on, and adjusted the "tubing board," and put it in place under the direction of the foreman. The deceased started to nail the "tubing board" to the "girts" so as to make it more secure, but the foreman told him it was unnecessary and it would not fall off. Evidence was produced to show that if the "tubing board" had been securely nailed to the girts, the "finger board" would have been pulled off of the "tubing board" and the deceased would not have fallen. Working on a "tubing board" is more hazardous than working on a platform or the ground: the deceased had never worked on a "tubing board," which the foreman knew, but the deceased was not warned nor advised by the foreman of the increased hazard of the work on the "tubing board." While pulling the tubing, the wire cable, while slack, got behind the "finger board" and when the power of the engine was applied, the wire cable became taut, and the power of the engine, together with the weight of the tubing on the wire cable, pulled the cable so strongly against the "finger board" as to upset, or cause the tubing board to fall, thereby throwing the deceased to the platform and, in falling, the deceased's arm caught around and held to the wire cable and when he hit the platform his arm was caught between the cable and the "bull wheel" resulting in his death within a short time. The brake was applied by the foreman while the deceased was falling but it did not stop the "bull wheel;" the engineer failed to disconnect his clutch, and thereby release the power of the engine from

the machinery and cause it to stop, although he had ample time to do so before the deceased became involved in the "bull wheel," but did disconnect the clutch, which stopped the machinery, after the deceased was wound about the "bull wheel."

The assignments of error presented and argued by the defendant in its brief are as follows:

"First. The court erred in striking from the defendant's answer the reference to plaintiff's original petition and to the answer admitting certain facts recited in the petition.

"Second. The proximate cause of the injury was the falling of the deceased from the tubing board.

"Third. Refusal of the court to give certain requested instructions.

"Fourth. Error of the court in giving certain instructions."

Counsel for the defendant rely principally upon, and urge, the first two assignments of error in their oral argument and printed brief, for a reversal of this cause, and both propositions have been very thoroughly and ably presented.

In the original petition and the first amended petition, the plaintiff alleges, among other things, that:

"* * * Notwithstanding the fall of the said Charles V. Hutchins and the dangerous position that he was thrown in by reason of the negligent acts of the defendant, its superintendent, foreman, agents and employes, as aforesaid, the said defendant, its superintendent, foreman, agents and employes, wrongfully, negligently and carelessly failed and refused to stop the running of said machinery, which was running in a wrongful, negligent, and dangerous manner, thereby causing the said rope line or cable to draw the said Charles V. Hutchins onto the 'bull wheel' shaft or other machinery in such manner that he, the said Charles V. Hutchins, was thereby immediately killed."

The defendant filed an answer in which it admitted this allegation of the plaintiff, the cause came on for trial and the opening statement of counsel for the plaintiff was made; the defendant then interposed a demurrer to the petition and opening statement of counsel for plaintiff, and objected to the introduction of any testimony on the part of the plaintiff for the reason that the said petition did not state a cause of action against the defendant. The plaintiff obtained permission to amend her petition and the cause was continued. In due time the plaintiff filed her amended peti-

tion, complete in itself, and set out additional facts. The defendant filed its answer, and as one of its defenses pleaded that the plaintiff had, in her original and first amended petition, set out the allegations above referred to, and further alleged that the defendant had, in answer to said original and first amended petition, filed an answer admitting specifically said allegations, that, therefore, the same had become an admitted fact in the case, which was binding upon the plaintiff, and that by reason of said admitted fact there was no cause of action against the defendant. When the cause came on for hearing upon the last amended petition and answer thereto, 'the plaintiff moved to strike that part of the answer containing allegations of the former petition of the plaintiff and former answer of the defendant, which motion to strike was sustained.

The defendant takes the position that, in view of this allegation in plaintiff's former petition and the answer of the defendant thereto admitting the same, the plaintiff cannot recover for the reason that it shows, as an admitted fact by the pleadings, that the injury, resulting in the death of the deceased, was caused by the negligence of the fellow servants of the deceased in their failing and neglecting to stop the machinery, after the deceased was thrown from the "tubing board." In other words, the defendant takes the position, that under the allegations of the plaintiff in her former petition, that the proximate cause of the injury, resulting in the death of the deceased, was the negligence of the fellow servants of the deceased in discharging their duty, and that, therefore, it was a proper defense, and these allegations of the former petitions and of the answer thereto of the defendant, were properly pleaded in the answer of the defendant to the last amended petition of the plaintiff.

We have carefully examined the pleadings in this case and find, that in the last amended petition of the plaintiff, there are other and additional facts alleged, which distinguish this case from the authorities cited by the defendant, wherein the rule is announced that where a party to an action makes an admission against his interest in a pleading in the absence of a mistake on his part, then the court, in passing upon the sufficiency of a subsequent pleading filed by him, should take such admission into consideration and treat it as an admitted fact in the case.

The amendment of a pleading rests largely in the discretion of the trial court.

An amendment should always be allowed in furtherance of justice, when such amendment does not change the claim or defense; we think that the following rule laid down by this court and consistently adhered to, is the proper one to govern this case, to wit:

"When an amended petition is filed in a cause, and no part of the original petition is referred to or adopted into the amended petition, such original petition is superseded, and is no part of the record, and, while it may be introduced in evidence by the adverse party the same as any other writing signed by the party, subject to be explained, its contents cannot be considered upon the trial either as a part of the record or as admissions of the plaintiff, unless introduced in evidence." Lane v. C., O. & G. Ry. Co., 19 Okla. 324, 91 Pac. 883. See, also, Territory ex rel., Johnston, Co. Atty., et al. v. Woolsey et al., 35 Okla. 545, 130 Pac. 934; Gaar, Scott & Co. v. Rogers, 46 Okla. 67, 148 Pac. 161; Rogers v. Bass & Harbour Co., 47 Okla. 786, 150 Pac. 706; Byers v. Sharp, 49 Okla. 456, 153 Pac. 127; Lausten v. Lausten, 55 Okla. 518, 154 Pac. 1182.

The last amended petition filed by the plaintiff, which made no reference to, nor adopted any part of, any former petition filed in the case, superseded all other petitions filed, and reference to allegations, contained in the former petition of plaintiff, made by the defendant in its answer to the last amended petition of plaintiff, constituted no defense and the same was properly stricken.

The defendant was entitled to introduce said former petitions in evidence for the purpose of contradicting the statements of the plaintiff, but upon examination of the record, we find that the defendant, after the case was closed by both parties, presented a motion to reopen the case for the purpose of introducing said former petitions, but on account of the time having arrived for the court to adjourn for the day, it was suggested by the court that that question be taken up when court convened the next day; which was agreeable to both parties, and when court did convene the following morning, nothing further was said about reopening the case and introducing said former petitions in evidence, and the court never acted upon said motion, and, therefore, it will be considered that the defendant, under such circumstances, abandoned the same. The defendant, having permitted the case to proceed to judgment without having the court to act upon its motion to reopen the case and introduce said pleadings in evidence, must be deemed to have waived its rights to have same acted upon, and in the absence of an

affirmative showing by the record that the same was acted upon adversely to the defendant, and exceptions thereto taken at the time, this assignment of error cannot be considered. Blackburn v. Morrison, 29 Okla. 510. 118 Pac. 402; Ecker v. Ecker, 22 Okla. 873, 98 Pac. 918; Oliver v. White, 74 Oklahoma, 176 Pac. 946.

Under the second proposition, "The proximate cause of the injury was the falling of the deceased from the 'tubing board'," the defendant takes the position that this cause is governed by the case of Barnsdall Oil Company v. Ohler, 48 Okla. 651, 150 Pac. 98, which counsel for the defendant insists is directly in point. We think there is an important distinction in the Ohler Case cited and the case at bar. The Ohler Case, referred to, was an action for damages occasioned by the falling of Ohler from a "tubing board" which was used in the same way that the "tubing board" in the instant case was used, and Ohler was thrown from the "tubing board" by the wire cable getting caught behind the "finger board" as in this case. The plaintiff, in the Ohler Case, took the position that the "tubing board" was a permanent part of the oil derrick, and was "a completed instrumentality and a place in which to work" and that, therefore, it was a positive and nondelegable duty upon the part of the company to furnish the plaintiff, when it became necessary for him to use the "tubing board" in pulling the tubing for the defendant, a completed instrumentality and a reasonably safe place in which to work, and that under such conditions, the defendant could not set up, as a defense, that the plaintiff, with other employes of the defendant, composing a "tubing crew," could not hold the defendant liable for the negligent act of the plaintiff or of a fellow servant in installing the "tubing board" preparatory to using the same in drawing the tubing from the well. In that case, Ohler, and three other employes of the defendant, went to the well for the purpose of drawing the tubing therefrom; the "tubing board" was on the sixth girt of the derrick and the employes took it down to the ground, and Ohler and a fellow servant, Smiley, after doing some work on it, hoisted and placed the "tubing board" on the fourth girt of the derrick; Ohler and Smiley ascended the derrick to the fourth girt and installed the "tubing board" by placing one end on the east girt and the other end on the west girt, and then braced the "tubing board" and nailed a "finger board" to it. The "tubing board" was lowered to the ground, hoisted to the fourth girt and installed by

Ohler, and his fellow servant, Smiley, on their own accord, and the company did not undertake to direct Ohler in the manner of installing the "tubing board," and Ohler and his fellow servant, Smiley, did not act under the supervision of any one representing the company in the installing of the "tubing board," but the company merely supplied suitable materials and reasonably competent fellow servants for the construction and installation of the "tubing board," adapted to the work the plaintiff was engaged in, to wit, pulling tubing. The court held in the Ohler Case that under such conditions, the "tubing board" was not a completed instrumentality and a place in which to work but that it was merely material furnished by the company, an incident to the work to be performed by the plaintiff, and as the installing of the "tubing board" was intrusted to or assumed by Ohler, that the company was not answerable to the plaintiff for the negligence of himself or of a fellow servant, in the construction of the "tubing board." In the Ohler Case, the plaintiff undertook the responsibility of the correct and proper installing of the "tubing board" himself, but in the instant case, it is alleged, and the evidence shows, that the deceased did not undertake the responsibility of installing the "tubing board," but that the same was put in shape and installed under the personal direction and supervision of the foreman of the company. In commenting on this proposition, the court in the Ohler Case, supra, lays down the following rule, to wit:

"There can be no contention that if a man were sent upon a tubing board already fixed and placed in a derrick, or if he were sent to use a tubing board in his work which the master undertook to install, or where the master undertook, either in person or through an employe, to supervise the installation, the rule would be otherwise, but where the master does not himself undertake the duty of furnishing such a structure as a tubing board, but merely supplies suitable materials and reasonably competent fellow servants by which it may be constructed and reasonably adapted to the work, and the duty of installing the tubing board as an appliance for use is intrusted to or assumed by the workmen themselves, the employer is not answerable to one of the workmen for the negligence of himself or of a fellow servant in the construction of the tubing board."

It is a well-settled rule that it is the duty of the master to furnish his servants with a reasonably safe place in which to work, and since the defendant in the instant case, through its foreman, supervised the installation of the "tubing board," the

defendant is liable if it failed to make said "tubing board" a reasonably safe place for the deceased to perform his work, or was negligent in the construction thereof; provided, such failure or negligence was the proximate cause of the injury resulting in the death of the deceased.

Under the second proposition, the defendant takes the further position that, under the evidence, the fellow servants of the deceased had ample opportunity to stop the machinery and prevent the deceased from coming in contact with the "bull wheel" after it was discovered that he had fallen from the "tubing board," and that, therefore, the negligence of the fellow servants cannot concur with the negligence of the defendant, in its failure to properly install the "tubing board" to create a cause of action. It is true that the evidence shows that the engineer had ample time, after it was observed that the deceased had been thrown from the "tubing board," to have disconnected the clutch and thereby release the power of the engine from the machinery and stop the machinery before the deceased was drawn on or about the "bull wheel," resulting in his death; it is also true that the failure of the fellow servant to release the clutch and stop the machinery was an immediate cause of the death of the deceased, but it does not necessarily follow that the failure or neglect of said fellow servant to release the clutch and stop the machinery is such an independent, intervening cause as to sever the causal connection between the defective manner in which the "tubing board" was installed and the injury inflicted upon the deceased causing his death.

In commenting on this question, the court, in the case of Producers' Oil Co. v. Eaton, 44 Okla. 55, 143 Pac. 9, which case involves a similar state of facts as the instant case, said:

"True, the act of plaintiff in applying the brake, if not the manner in which he applied the same, was an immediate cause of his injury; but we do not think it can be said as a matter of law that any act or acts chargeable to him constitute such an independent, intervening cause as to sever the causal connection between the defective condition of the rope, or tie, which proved to be the weakest part thereof, and the injury suffered by plaintiff when tested by the foregoing rule."

In the case of Prickett v. Sulzberger & Sons Co., 57 Okla. 567, 157 Pac 356, the court held:

"The master is liable for injuries due to the concurring negligence of himself and a fellow servant in cases where the injury would probably not have occurred but for the negligence of the master."

The court, in the case of Prickett v. Sulzberger & Sons Co., supra, quoted with approval the following rule, to wit:

"If the acts of the servant would not have resulted in the injury but for the negligence of the master, the master is liable, but, if the injury would have occurred because of the act of the servant, though the master had been free from negligence, then the master would not be liable." Gila Valley G. & N. Ry. Co. v. Lyon (Ariz.) 80 Pac. 337.

The court, in the case of Bartlesville Zinc. Co. v. Prince, 59 Okla. 141, 158 Pac. 627, lays down the following rule:

"It is the settled law of this jurisdiction that where the master fails in his duty to the injured servant of furnishing safe premises, machinery, tools or appliances, and, as a result of this failure the servant is injured, the fact that the negligence of a fellow servant commingles with it will not exonerate the master from liability."

The evidence shows unmistakably, and the jury was warranted in so finding, that had it not been for the negligence or improper manner in which the "tubing board" was installed by the defendant, the deceased would not have received the injury which resulted in his death, and therefore, under the rule laid down in the foregoing cases, the defendant is liable, notwithstanding the fact that the negligence of the defendant concurred with the negligence of a fellow servant in producing the injury.

While the negligence of the fellow servant in failing to stop the machinery was the immediate or nearest cause of the disaster, still if the defective manner in which the "tubing board" was installed was the cause that set in operation other causes, then the failure or neglect to properly install said "tubing board" was the proximate cause of the death of the deceased.

In other words, if the neglect or failure of the defendant to properly install the "tubing board," thereby causing the deceased to fall, was the cause of the fellow servants to not do their duty in stopping the machinery before the deceased was drawn on to the "bull wheel" causing his death, then the failure or neglect of the defendant to properly install said "tubing board" was the proximate cause of the death of the deceased.

"The proximate cause is the efficient cause, the one that necessarily sets other causes in operation. The causes that are

merely incidental or instruments of a superior controlling agency are not the proximate causes and the responsible ones, though they may be nearer in time to the result. It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster." Insurance Co. v. Boon, 95 U. S. 117, at page 130.

The evidence shows that when the "tubing board" was falling there was considerable confusion among all present; the party who had charge of the brake ran from the platform, and Mr. Myers, who had charge of the engine, and who was standing at the edge of the platform, became confused and excited; no one could tell where the "tubing board" would fall, and this was the reason why Myers did not throw out the clutch and stop the engine prior to the time the deceased was wound about the "bull wheel"; and it is, therefore, clear that the falling of the "tubing board," which was due to the improper installing of the same, was the cause of Myers not throwing out the clutch and stopping the engine in time to prevent the death of the deceased. Under such circumstances, the failure or neglect of the defendant to properly install the "tubing board," and to make the same a reasonably safe place for the deceased to work was the proximate cause of the injury resulting in the death of the deceased.

The question of whether the defendant was negligent in installing the "tubing board," and whether the same is the proximate cause of the death of the deceased, is one of fact for the jury to determine, if there is any evidence reasonably supporting the same. Producers Oil Co. v. Eaton, 44 Okla. 55, 143 Pac. 9; St. Louis & S. F. R. Co. v. Darnell, 42 Okla. 394, 141 Pac. 785; Atchison, T. & S. F. Ry. Co. v. St. L. & S. F. R. Co., 41 Okla. 80, 135 Pac. 353, 48 L. R. S. (N. S.) 509; St. Louis & S. F. R. Co. v. Davis, 37 Okla 340, 132 Pac. 337; Petroleum Iron Works Co. v. Wantland, 28 Okla. 481, 114 Pac. 717. The evidence is sufficient to support this position.

The defendant, in failing to properly install said "tubing board," should be held responsible for all the consequences thereof which a prudent and experienced man, acquainted with the existing circumstances, whether they could have been ascertained by reasonable diligence, would have thought of as reasonably possible to follow, if they had been suggested to the mind of the foreman supervising the installing of the "tubing boards." The falling of the deceased, and his becoming involved with the wire cable and the "bull wheel" and the likelihood of the machinery not being stopped in time to prevent the deceased from being thrown on the "bull wheel" should have been thought of as reasonably possible by the foreman at the time of the installing of the "tubing board."

"The correct rule seems to be that a person guilty of negligence or an omission of duty should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact exist, whether they could have been ascertained by reasonable diligence or not, would have thought of at the time of the negligent act as reasonably possible to follow, if they had been suggested to his mind." Producers Oil Co. v. Eaton, 44 Okla. 55, 143 Pac. 9; Chicago, R. I. & P. Ry. Co. v. Duran, 38 Okla. 719, 134 Pac. 876; Chicago, R. I. & P. Ry. Co. v. Beatty, 27 Okla. 844, 116 Pac. 171; Hughes v. C., R. I. & P. Ry. Co., 35 Okla. 482, 130 Pac. 591; Bales v. McConnell, 27 Okla. 407, 112 Pac. 978, 40 L. R. A. (N. S.) 940; Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159, 29 Sup. Ct. 270, 53 L. Ed. 453.

Counsel for the defendant contend that the court erred in permitting certain expert testimony to be given as to the manner of the functioning of a brake on a "bull wheel." The proof shows that the "bull wheel" had oil on it; that William Durham was intrusted with the duty of handling the brake, but when the deceased fell, Durham ran off the platform of the derrick and Mr. Becker, foreman in charge of the work for the defendant, ran and put his weight on the brake lever, which was the proper way to apply the brake, but it did not stop the "bull wheel." The plaintiff introduced witnesses who had worked in the various positions as members of "tubing crews," and who knew the manner in which the brake functioned and was applied, and they testified that when the brake is in proper condition and the "bull wheel" is free from foreign matter, such as oil and grease, that the "bull wheel" will be stopped upon the brake being properly applied. We have examined the record closely and think this evidence was properly admitted and no prejudicial error resulted therefrom.

We have carefully examined the instructions requested by the defendant which the trial court declined to give, and also the instructions complained of by the defendant that were given by the trial court, in connection with the record in this case and find that the assignments of error urged by the defendant in connection there-

with, have been fully discussed and disposed of by other assignments, heretofore set out and determined in this opinion. We do not find any prejudicial error committed by the trial court in connection with the instructions.

The judgment of the lower court is, therefore, affirmed.

By the Court: It is so ordered.