## OWENS v. STATE ex rel. MOTHERSEAD, Bank Com'r.

No. 17269.  Opinion Filed Nov. 13, 1928.

C. M. Oakes, for plaintiff in error.

Pounders & Pounders, for defendant in error.

HALL, C. This action was instituted in the district court of Tulsa county in September, 1924, by O: B. Mothersead, Bank Commissioner, as plaintiff, against O. O. Owens, defendant. The parties, usually, will be referred to as they appeared in the trial court.

The action was for recovery on a certain promissory note which defendant had executed to the First State Bank of Bristow on December 7, 1923, in the sum of $7,500. The petition was in regular form, and the defendant seasonably filed his answer and cross-petition to the petition; and thereafter filed his second amended answer, set-off and cross-petition, wherein he admitted the execution of the note, but denied any liability to pay the same, alleging as a reason that he at that time had a valid claim against the First State Bank of Bristow accruing prior to the time when that institution was taken over by the Bank Commissioner, in an amount exceeding the sum due upon the note. The claim pleaded as a set-off by defendant is exceedingly lengthy, and involves a series of complicated transactions. It would be impracticable to state the cross-petition verbatim, and it is difficult to abridge it or set forth any useful abstract of same. However, it may be stated that on or about July 7, 1923, one H. H. Barker, F. N. Jondahl, and Joe K. Barker, H. H. Barker being the president and managing officer of the First State Bank of Bristow, and all being directors and officers of the Bristow National Bank of Bristow, Okla., obtained from defendant the loan of a certain $50,000 Liberty Bond, at which time the parties entered into a certain contract in relation to the subject, the contract being mostly written, but partly oral. The written portion of the contract was affixed as an exhibit to the answer and cross-petition, and the oral portions thereof were fully pleaded as will be hereinafter stated. Essential portions of the contract will be set out, but, on account of its length, it will not be fully stated. Briefly, the contract provided that H. H. Barker, at the time of making the contract, desired to procure a loan from Joe K. Barker and F. N. Jondahl in the sum of $45,000 and in order to accomplish that purpose had obtained from the defendant the loan of a certain Liberty Bond in the sum of $50,000, which bond is described in the contract, and that the bond was to be returned within four months from the date of the contract; that to secure the return of the bond and to indemnify the defendant against any loss on account of failure to return the bond, H. H. Barker was to indorse and deliver to defendant a note signed by Joe K. Barker and wife, and F. N. Jondahl and wife, in the sum of $40,000 payable four months after date, with interest from maturity at 10 per cent. The contract further provides "that H. H. Barker has procured or will immediately procure from Joe K. Barker and his wife and from F. N. Jondahl and his wife, or from such interested parties as own the same, conveyance of certain land and interest therein as shown upon the schedule of A, B, and C, provided in the **contract."**

Defendant was empowered to commence an immediate sale and disposition of this property. H. H. Barker was authorized, under this contract, "by the parties making such conveyances to proceed to sell any or all of the property so conveyed at such prices as the second party (H. H. Barker) shall deem proper, and the proceeds resulting from such sale shall be applied in liquidating the loan in connection with which the second party (H. H. Barker) will use said Liberty Bond as collateral security. The second party agrees to advise the first party before any sale is made of any such property, and will procure first party's consent to such sale, and advise first party immediately upon the receipt of the proceeds from any such sale and of the dispositions made of the same."

The contract further provides that these deeds and assignments of oil and gas leases and royalties shall be held by the first party, the defendant, in escrow, and when any of the property is sold, the second party, H. H. Barker, agreed to procure a new deed from the parties making such conveyances; that

is, Joe K. Barker and F. N. Jondahl and their wives. The new deed was to be made directly to the purchaser, and on the completion of such purchase and receipt of the purchase price, the deed formerly executed to defendant covering the particular property was to be destroyed.

The contract further provides that if the loan procured by the second party, that is, if the loan which H. H. Barker obtained by the use of defendant's Liberty Bond as collateral security is not paid when due, and in case the said bond is not returned to the first party, the defendant is authorized to sell, independently of any other person, all this property remaining unsold, within 30 days after maturity of the indebtedness, and apply the proceeds thereof upon the loan; and if the same be not sufficient to pay the balance due on said loan, the second party, the Barkers and Jondahl, agreed to pay a sufficient amount so as to make up the full amount of the loan, and thereby procure the release of the Liberty Bond and return the same to the first party, the defendant.

The above constitutes the essential part of the written portions of this contract, necessary to determine the questions before us.

The defendant set forth in his answer and cross-petition that the schedules A and B, referred to in the contract, were never made out and reduced to writing, but that at the time of the execution of the contract, it was agreed and understood by all the parties that, in lieu of making said schedules, said Joe K. Barker and F. N. Jondahl and their wives would transfer to defendant by proper conveyances all their oil and gas mining leases and all oil royalty interests in their land and the real estate which they owned. That thereafter, in the performance of said contract on their part, Joe K. Barker and F. N. Jondahl and their wives did convey to the defendant many pieces and parcels of this property; that at said time defendant believed the said Joe K. Barker and F. N. Jondahl had conveyed to him all their real estate and all their interest in all oil and gas mining leases, and all oil royalties in and to all the property which they at said time owned; and that the said Jondahl and Barker intended to convey at said time all the property of the aforesaid kind and character which they at that time owned; but that among other property at such time owned by Joe K. Barker and F. N. Jondahl was an undivided one-eighth interest each in lots 8 and 9 of section 1, township 14 north, range 6 east, in Creek county, Okla.; and that due to a mutual inadvertence, mistake or oversight of all the parties to the contract, the said Barker and Jondahl failed and neglected to convey to the defendant the said undivided one-eighth interest owned by each of them in this property. It is further stated that, during the month of October, 1923, the First State Bank of Bristow, Okla., was in a precarious financial condition, and such was known to exist by O. B. Mothersead, plaintiff in this action, and that, during that month and sometime prior thereto, Mothersead, by reason of his office and the condition of the bank, was actually exercising supervision and control over this bank and all of its transactions; that at that time negotiations were commenced to consolidate the Bristow National Bank of Bristow, Okla., and the First State Bank of Bristow, Okla., and that Mothersead, the Bank Commissioner, required, as such officer, that before he would give his necessary consent to the consolidation of these banks, the sum of $54,000 in cash must be placed in the national bank and bad paper representing $54,000 withdrawn from its assets; that the officers of these two banks agreed to the consolidation on such conditions, and the agreement was actually carried out: that H. H. Barker was president of the First State Bank of Bristow, and gave his time and attention to the conduct of its affairs, and participated in all these negotiations, having for his purpose the consolidation of the banks, and that all these persons, parties to this contract, were officers of these two banks, and they, together with Mothersead, all understood and knew and it was explained that the defendant had a first, superior and prior claim on all the property owned on the 9th day of July, 1923, by Joe K. Barker and F. N. Jondahl, and that included in said property was the above specifically described property owned by Joe K. Barker and F. N. Jondahl. It is further alleged that it became necessary, in withdrawing the $54,000 worth of uncollectible paper from the Bristow National Bank, for its officers to borrow either all or a part of that amount of money in order to place in that institution the sum of $54,000 in cash, and the defendant contributed the sum of $6,000 to this $54,000 necessary to raise, and contributed the same upon the express condition, understanding and agreement by all the officers of both said banks and the plaintiff herein, Bank Commissioner, that he should take title to, sell, lease and dispose of according to his own judgment all of the aforesaid property conveyed, or to be conveyed, as provided in the contract, and remaining unsold, to liquidate the loan secured by the $50,000 Liberty Bond, and to

reimburse him for the $6,000 contributed by defendant, in order to consolidate said banks. And that the one-eighth interest each of Barker and Jondahl in and to the above specifically described property was within the contemplation of the parties, and that the plaintiff herein knew at the time that the defendant had the right to the legal title to this property.

The cross-petition further alleges that these banks were consolidated, and that notwithstanding the contracts, and notwithstanding the full and complete actual notice of both the written and oral provisions of this contract and acceptance thereof, and all the terms and conditions and the benefits arising from the performance by defendant of the contract, the First State Bank of Bristow, in violation of the conditions of the contract, did, on the 21st and 22nd days of December, procure and take from the said Joe K. Barker and F. N. Jondahl a deed in writing conveying to the said bank all their right, title and interest in and to the property hereinbefore specifically described to secure a past due indebtedness to the bank, and, in doing this, accepted same with full and complete notice of all the rights of the defendant under the contracts, the written contract and oral contract executed on his part, and that immediately upon the acceptance of this conveyance to the bank, the defendant became entitled to a conveyance of said property from said bank, and that he had prior to the commencement of the action made repeated demands upon said bank and upon plaintiff, the Bank Commissioner, for a conveyance of said interest to him, but the bank and the plaintiff, the Bank Commissioner (the bank having been subsequently taken over by the said Bank Commissioner), at all times refused to convey such interest or any part thereof to defendant; and that, by reason of all these matters. there arose an implied obligation and promise on the part of the First State Bank of Bristow, and the said plaintiff as Bank Commissioner of the state of Oklahoma, to convey said interest in said land to the defendant, and the failure and neglect of said bank and the said plaintiff as Bank Commissioner of the state of Oklahoma is and constitutes a breach of said implied legal obligation and promise and contract, and thereby this defendant became and is entitled to recover from the plaintiff herein the reasonable market value of said land. Defendant further alleges that in January, 1924, the First State Bank of Bristow failed, and that said plaintiff herein, as Bank Commissioner of the state of Oklahoma, took charge of the assets of said bank, and proceeded under the law to administer the affairs of the bank, and is continuing to do so; that during the month of February, 1924, the said Liberty Bond loaned to H. H. Barker, Joe K. Barker, and F. N. Jondahl was totally lost to defendant.

Defendant alleges the reasonable market value of this land, or the interest therein owned by F. N. Jondahl and Joe K. Barker, was and is the sum of $11,000, and that the land and properties, together with aforesaid property conveyed to the bank, is insufficient to repay or compensate him for the loss of the $50,000 Liberty Bond, which was worth the sum of $50,000, and $6,000 advanced in order to facilitate the consolidation of the banks; that said Barkers and Jondahl are each of them insolvent and have been so since the month of February, 1924, and that he cannot recover any part remaining of the aforesaid loss except in recovering the value of the said one-fourth interest in said land.

In this connection, defendant asked and prayed for judgment against plaintiff in the sum of $11,000, with interest thereon at the rate of 6 per cent. per annum, from the 31st day of January, 1924, and that the judgment be offset against the claims and demands of the plaintiff against the defendant.

The demurrer objects to said pleading of the defendant on the grounds: (1) That the matters set forth in said pleading fail to state grounds of relief in favor of defendant and against the plaintiff; (2) that the matters and things therein set forth arose out of an alleged tort, and that the damages therein alleged are unliquidated; (3) that the facts set forth do not constitute a proper counterclaim, for the reason that the transactions set forth in said pleading are in nowise related to the subject of the plaintiff's cause of action; (4) that the set-off constitutes an action against the state of Oklahoma, which cannot be prosecuted without the state's consent, and that the claim involved in the set-off was not presented to the Bank Commissioner for allowance; (5) that the facts set forth in defendant's cross-petition show that the plaintiff merely holds a mortgage upon the real property therein described, and that the defendant's rights therein are not affected by such mortgage; and (6) because of a defect of parties, in that said Joe K. Barker and F. N. Jondahl are the legal owners of the real estate described in the cross-petition.

Counsel for plaintiff in error (defendant)

arges several assignments of error, which are presented in his brief under. two .main propositions. His first contention is that:

"The cross-petition of the defendant clearly states a cause of action against the plaintiff which constitutes a proper set-off against the subjects sued upon."

Under this issue he discusses the first, second and fifth grounds of the demurrer.

The second proposition involves a discussion of the fourth ground of the demurrer.

The defendant in error concedes some of the contentions of plaintiff in error, and also abandons some of the grounds of the demurrer, and directs his argument at three propositions, which make the issues in the case.

First, he contends that the defendant's title to the realty is that of trustee or mortgagee. Second, that the Bank Commissioner's title to the realty is a mortgage. Third, that the defendant's set-off is based on a tort; that is, he contends that his cause of action as pleaded sounds in tort instead of an action on an implied contract.

Plaintiff admits, and properly so, that:

"Where one's property is wrongfully taken and appropriated to the latter's damage, he may waive the tort and by way of set-off claim * * * credit against one prosecuting an action against him, which action is itself based upon contract, and that by waiving the tort, the set-off becomes founded upon an implied contract."

The foundation of this doctrine is stated by Pomeroy, in his Remedies and Remedial Rights, sections 568 and 801, as follows:

"From certain acts or omissions of a party creating a liability to make compensation in damages, the law implies a promise to pay such compensation.. Whenever this is so, and the acts or omissions are at the same time tortious, the twofold aspect of the single liability at once follows, and the injured party may treat it as arising from the tort, and enforce it by an action setting forth the tortious acts or defaults; or may treat it as arising from an implied contract and enforce it by an action setting forth the facts from which the promise is inferred by law."

It is the settled law that a defendant in an action based on a contract can plead as a set-off a cause of action founded on a contract, express or implied. In the present case the act of the plaintiff in taking title to and retaining the property constituted a cause of action both in contract and in tort, or a tort co-incident with a contract, which permitted the defendant at his election to waive the tort, treat the transaction as a sale, and sue on the implied contract. His cross-petition clearly comes within the rule announced in the following cases: Loeb v. Loeb, 24 Okla. 384, 103 Pac. 570; Curlee v. Ruland, 56 Okla. 329, 155 Pac. 1182; Robertson v. Howerton, 56 Okla. 55, 156 Pac. 329; Caldwell v. Stevens, 64 Okla. 287, 167 Pac. 610; Schmidt v. Turnbuckle Oil Co., 88 Okla. 223, 212 Pac. 418; Braden v. Gulf Coast Lumber Co., 89 Okla. 215, 215 Pac. 202; Johnson v. Moore, 113 Okla. 238, 241 Pac. 140; Farmers & Merchants National Bank of .Hobart v. Huckaby, 89 Okla. 214, 215 Pac. 429; Smith v. McCarthy, 39 Kan. 308, 18 Pac. 204; Challiss v. Wylie, 35 Kan. 506, 11 Pac. 438; Terry v. Munger, 121 N. Y. 161, 24 N. E. 272, 18 A. S. R. 803, 8 L. R. A. 216.

In fact, plaintiff admits the .correctness of the rule, ·but it is his contention that · defendant did not bring himself within the rule, contending that he used a wrong yardstick in computing the measure of damages for the breach of the implied contract, and thereby waived the tort in name only, and not in point of fact. Under our system of pleading, this matter is not always easy of determination, because under the Code, or reformed procedure, the pleader must state the facts, in any character of action, without feigned issues. The rule in this connection is briefly and correctly stated in the case of Smith v. McCarthy (Kan.) supra, which was quoted with approval in the cases of Nation v. Planters & Mechanics Bank, 29 Okla. 819, 119 Pac. 977; Stringer v. Kessler, 56 Okla. 50, 155 Pac. 867, and Farmers & Merchants National Bank of Hobart v. Huckaby, supra, as follows:

"In such a case, where the facts alleged indicate a waiver of the tort, and are sufficient to constitute a cause of action on contract, it should be so regarded. although some words of the pleadings are adapted to an allegation in an action ex delicto."

In Nation v. Planters & Mechanics Bank, supra, it was said:

"And in such cases, if the cause of action as set forth is doubtful or ambiguous as to whether the allegations set out present an action in contract or tort, every intendment will be given to construe the cause as in contract and not in tort."

The statement of the measure of damages alone indicates that the action was based on a contract instead of a tort. The measure of damage alleged and prayed for was the alleged market value of the property wrongfully taken and retained by the plaintiff.

The theory upon which such an action is permitted is that by the waiver of the tort the party is restricted to a recovery not exceeding the value of the property so taken and retained. Other damages, such as special, double or exemplary damages belonging to strictly tortious actions, are prohibited.

It appears to us to be elementary that a suit for compensation based on a transaction involving what is in law a sale, and what operates to transfer a title to property, where it is not sought to have the specific property returned to its owner, the measure of damage is the value of the property so taken and appropriated. Any other rule would be inconsistent with the fundamental law of damages, as the same relates to the law of contracts. The rule is stated in 17 Corpus Juris, 852, sec. 168, as follows:

"Where a tort is waived and an action is brought in contract, the measure of damage is governed by the rule applicable to actions in contract."

Plaintiff contends that, in case of a waiver of the tort, the measure of damage is not the value of the property taken, but it is the benefit resulting or accruing to the wrongdoer's estate. With this in its unqualified or unrestricted sense we cannot agree. However, when not attempting to state a fixed or exclusive rule, it may be said in a general way that the law will at the election of the party injured imply or presume a contract on the part of the wrongdoer to pay to the injured party the full value of the benefits resulting to such wrongdoer. Farmers & Merchants National Bank of Hobart v. Huckaby, supra. This rule is not necessarily objectionable when applied to a great number, or perhaps a majority, of the cases, when it does not attempt to set forth a rule of independent application to measure the damage in an action based upon an implied contract. The rule is not primary nor independent, and must bear the qualification that, in determining the value resulting to the estate, the value of the property wrongfully taken is the "yardstick," and when the one, the value of the property, is determined, the other, the benefit to the estate, logically follows. For all practical purposes, it may be said that the rules are reciprocal; that is, there is a conclusive legal presumption that the value resulting to the estate of the wrongdoer is equal to and equivalent to the actual value of the property taken by the wrongdoer. Any other rule would lead to a somewhat anomalous result. For example: In a case

where a strictly luxurious article. such as a diamond or a locomotive vehicle suited only for pleasure, is appropriated by another person, if the owner of the property were restricted to showing the actual benefit which resulted to the wrongdoer's estate, he might and would probably fail, as either article would most likely be an economic liability. However, the law would not refuse to give the injured party relief, but would fix unequivocally the value of the property as the measure of damages, and this value would determine the benefit resulting to the wrongdoer's estate. Apparently, that was the method of arriving at the measure of damages in the case of Farmers & Merchants National Bank of Hobart v. Huckaby, supra.

It is true that cases often arise where the wrongdoer has had a beneficial use of the property where the question of the benefit to the estate of the wrongdoer might have to be considered in order to ascertain whether a particular tort imposes upon the wrongdoer an implied contract to make compensation and determine whether a certain defense, such as a set-off, could be pleaded or set-off in a cause of action against the injured party; yet such a case would not set forth the rule for the admeasurement of damages, but, strictly speaking, would be an investigation and an inquiry as to certain damages to determine whether or not the tortious act was a quasi or implied contract or a tort in the strict sense of the word.

In this connection, the Supreme Court of Idaho, in the recent case of Tsuboi v. Cohn, 231 Pac. 708, in declaring the correct rule, said:

"Where a tort-feasor, with knowledge of the location of the premises, deliberately and intentionally, and for the purpose of obtaining some benefit at the expense of another, knowingly permits or causes a trespass to be committed, resulting in damages, he impliedly agrees to pay for any damages that may be sustained, and an action upon such implied contract will lie. Lazarus v. Phelps, 152 U. S. 81, 14 S. Ct. 477, 38 L. Ed. 363."

The above statement of the rule as to the measure of damages, and the statement of such rule quoted in a foregoing paragraph from Corpus Juris, accord fully with our own views on the subject.

Counsel for plaintiff devote a considerable space in their brief to the nature of the original and first amended cross-petition of the defendant. In fact, counsel's contention that the cross-petition was an action in tort seems to be based wholly upon these dis-

carded pleadings. It is settled law that, where an amended pleading is filed as a substitute for the other pleading or filed without expressly adopting the original pleading, the allegations of the prior pleading, except as repeated in the amended pleading, are wholly abandoned, and no reference whatever can be made to the original pleading in determining whether or not a demurrer should be sustained to the pleading in its amended form. Lane v. Choctaw, O. & G. Co., 19 Okla. 324, 91 Pac. 993; Territory ex rel. Johnston v. Woolsey, 35 Okla. 545, 130 Pac. 934; Cushing Gasoline Co. v. Hutchins, 93 Okla. 13, 219 Pac. 408; Dawkins v. Peoples Bank & Trust Co., 117 Okla. 181, 245 Pac. 594.

The next proposition presented by the parties, which was specially raised by the demurrer, is whether or not the defendant's title to the realty is that of a mortgagee.

We think the instrument, the contract, is nothing more than a general beneficial power of sale, and is in no sense of the term a mortgage. (1) There was no defeasance clause, express or implied. The land was to be immediately conveyed to defendant and the sale of same was to be immediately commenced by the defendant by and through H. H. Barker, the formal second party to the contract. The very purpose of the contract, as is disclosed in express language, was that the property should be sold absolutely before any of the indebtedness mentioned in the contract matured. (2) The Barkers and Jondahl and their wives were to execute their deeds to the respective purchasers of the property when any portion of the property was sold. The defendant was then to destroy the particular deed of that particular property conveyed to what may be here termed the final purchaser, which deed he, the defendant, had obtained from the Barkers and Jondahl pursuant to the contract and power of sale.

The sole purpose of this contract was not a mortgage, but the exercise of a power of sale as follows: Immediately after the execution of the contract and its acceptance, and the delivery of the Liberty Bond to the second party, the defendant, through H. H. Barker, was to commence the sale of this property for the purpose of liquidating the loan, and in case the same was not sold within the four months after date, the first party, the defendant, was then to exercise the power of sale absolutely independent of any other person as to the property remaining unsold, if any.

This instrument negatives the idea of a defeasance. In fact, a defeasance is wholly inconsistent with the contract, the whole or any part of it.

It is a defeasance, express or implied, which makes an instrument in the form of an absolute conveyance a mortgage. An existing debt does not change the character of an absolute conveyance to that of a conditional instrument when the facts and circumstances of the transaction negative the right of redemption.

In the present case, if any defeasance had been intended in these conveyances, it is certainly to be presumed, and conclusively presumed (outside of appropriate allegations by the Barkers themselves in an action to reform or cancel the contract), that the instrument would not have contained a provision to commence the sale and disposition of this property immediately after the execution of the contract to defendant, and before any portion of the indebtedness matured. In other words, it is clear from this contract that it was necessary for the Barkers to immediately raise $45,000 for their immediate use, either privately or for the operation of their bank; and in order to secure this loan, they borrowed the Liberty Bond and put it up as collateral security with some person or bank, and obtained $45,000 in cash on it. It clearly appears from this contract and cross-petition that the parties understood that, in order to liquidate the $45,000 indebtedness and obtain a return of the bond from the pledgee, and thereby a return of it to its owner, the defendant, it was necessary for them to sell and dispose of their land and royalty interests and oil leases, and that it was advisable that they not wait for this obligation to fall due before selling or disposing of this property. And the execution of the absolute power of sale to the defendant was the method of securing this accommodation, and the means and method of disposing of their property in order to liquidate the loan.

The contract is only a power of sale, and substantially conforms to the provisions of our law as set forth in sections 8487, 8489, 8495, and 8499, Comp. Stat. 1921.

It is the further contention of counsel for plaintiff that the deed to the bank, the plaintiff herein, is but a mortgage and styling it only a "second mortgage." The allegations in the cross-petition of defendant are that the conveyance is an absolute deed with no mention that it is either a first or second mortgage, or that the estate con-

veyed therein is limited or conditioned upon the nonassertion or relinquishment of the rights thereto by the defendant. The demurrer admits these allegations and all rational and logical inferences to be drawn therefrom. Therefore, we are necessarily bound by the state of the record rather than statements of counsel in their briefs.

The bank being the grantee and holder of the deed, it is in a better position than any other person to know whether or not the deed is a mortgage, and the particular kind and character of the mortgage, if it be such; but that knowledge is outside of the pleadings. We observe that the defendant alleges in his cross-petition that the deed was executed to the bank to secure a past due indebtedness; but whether the instrument is a mortgage or an absolute conveyance carrying with it a power of sale to dispose of the property and credit the indebtedness of the grantors, or the grantors themselves, with the proceeds, has no legal relationship with this controversy.

The conveyance being in form an absolute deed, and nothing in the record showing any offer by the plaintiff to revest the title or to limit it upon the rights of the defendant under the contract, or if the instrument is in equity only a mortgage, no offer to release same or subordinate the instrument to the rights of the defendant, in either instance the instrument and the conduct of the plaintiff would have the same effect in defeating defendant's rights in the property. The property was placed beyond the reach and beyond any power or disposition by the defendant unless he went into a court of equity and succeeded in having the conveyance canceled. He elected the other remedy and sued for the value of the property, alleging that all this property embraced within the terms of the contract was insufficient to reimburse him for the loss of the $50,000 Liberty Bond and the $6,000 advanced to the Barkers and Jondahl and the bank.

We are not impressed with the contention of counsel for plaintiff in urging that the bank or Bank Commissioner could not make a conveyance of this property to defendant. assigning as a reason for the refusal that the bank might commit a breach of duty to the Barkers and Jondahl. In view of the allegations in the cross-petition. that all the parties connected with the bank and the Bank Commissioner himself knew the facts as alleged. this argument is somewhat untenable. We know of no rule of law which will excuse an actionable wrong upon the ground that the wrongdoer had so shaped his wrong, or breach of duty, that the undoing of it might create another wrong or breach of duty. To sustain this contention of plaintiff would be to permit him to take advantage of his own wrong.

Counsel for plaintiff, in defense of the position or conduct of the plaintiff, says that "the county records showed no lien in favor of defendant and what the bank's investigation of the alleged claim of prior lien may have disclosed to it does not appear." In view of the state or condition of the pleadings (their redundancy in showing that all the parties at all times were familiar with all the terms of defendant's contract), we think that the contention is frivolous. It is universally understood that the validity of a conveyance or rights in and to real property are not dependent upon their disclosure upon a county record, when the parties to the transaction know the facts. The county records are to impart constructive notice. Actual notice, of course, is notice of a higher grade, only it is often more difficult to prove.

The next proposition presents the sixth ground of the demurrer. Under this proposition, plaintiff contends that the demurrer was properly sustained for the reason that Joe K. Barker and F. N. Jondahl were not made parties to the suit by the defendant.

This contention is without merit, and will not be discussed other than to say that, under our law in the present case, it was neither the legal nor moral duty of the defendant to make these persons parties to the action.

The situation is analogous to a case, for example, where Jones owns a mule and Smith borrows the mule and sells it to Brown. Jones, at his election, can bring an action in replevin and recover the particular mule, or he can treat the tort as waived, treat the transaction as a sale and sue Brown upon an implied contract to pay the market price for it. Jones would probably sue the one or the other who was most solvent, and no one would contend that he could not maintain the action against Brown without joining Smith.

If the adverse party desires to litigate his claims and equities with other parties, unless the presence of the other parties is essential to a complete determination or settlement of the question between the existing parties to the suit, he must do so in a separate action. In such case, it is not even permissible to bring them in the case on mo-

tion. Enid Oil & Pipe Line Co. v. Champlin, 113 Okla. 170, 240 Pac. 649, in which case this court, through Mr. Justice Hunt, said:

"A third party cannot be brought into an action as defendant on motion of the main defendant where the issues in the original suit are foreign to any issues between him and his codefendant, and the court cannot, over his objection, require him to litigate a controversy between himself and codefendant, which controversy is not germane to the issues in the original action."

The presence of Jondahl and Barker as parties thereto was not necessary to this action.

The allegations set forth in the answer and cross-petition of the defendant state a cause of action against the plaintiff, and it was error to sustain plaintiff's demurrer to the answer and cross-petition of defendant.

For the reasons herein stated, the judgment of the lower court is hereby reversed.

BENNETT, HERR, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.