1997 OK 73

**UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellee/Counter Appellant,**

v.

**Dennis V. McCANTS and Rhonda D. McCants, Appellants/Counter Appellees.**

**No. 82981.**

Supreme Court of Oklahoma.

June 10, 1997.

As Corrected on Denial of Rehearing Sept. 9, 1997.

D. Lynn Babb, Haven Tobias, Chris Condren, Pierce Couch Hendrickson, Baysinger & Green, Oklahoma City, for Appellee/Counter Appellant.

Joe B. Reeves, Lawton, for Appellants/Counter Appellees.

HODGES, Justice.

¶1 Dennis McCants (Husband), a single man, purchased a house in 1985 and insured it with United Services Automobile Association (USAA). Husband married Rhonda McCants (Wife) in 1987. They lived in the house until August 28, 1991, when the house was heavily damaged by fire.

¶2 The couple filed a claim on the insurance policy, which had been renewed from year to year. USAA promptly paid the mortgage holder, but declined to pay benefits to Husband and Wife on grounds of arson. USAA then commenced this action against Husband and Wife to recover damages for insurance fraud. Husband and Wife counterclaimed for benefits due under the insurance contract and for bad faith maintaining that the fire was an accident. A jury found for USAA in its fraud action and awarded $73,-222.13 in damages which included $31,499.49 to compensate for expenses USAA incurred in investigating the fire and $41,722.64 for payment to the mortgage holder as loss payee. The jury also found against Husband and Wife on their contract claim for policy benefits. The trial court granted summary judgment in favor of USAA on the bad faith counterclaim. The trial court also granted a judgment notwithstanding the verdict only to Husband on USAA's fraud claim. Husband and Wife brought this appeal. USAA brought a counter appeal.

¶3 The Court of Civil Appeals concluded that both Husband and Wife should have been granted judgment notwithstanding the verdict on USAA's fraud claim. That court went on to conclude that Husband was entitled to a new trial on his contract claim but that USAA would not have to cover Wife's fire losses. This Court granted certiorari review. The opinion of the Court of Civil Appeals is now vacated and the trial court's decision is affirmed.

I. Husband and Wife Were Joint Insureds
Under the Terms of the Contract of
Insurance

¶4 The contract of insurance in effect for the renewed policy period of May 19, 1991, through May 19, 1992, provided the following definitions:

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household . . . .

. . . .

3. "insured" means you and residents of your household who are:

a. your relatives; or

b. other persons under the age of 21 and in the care of any person named above.

Despite these definitions, the Court of Civil Appeals reasoned that, because the property was not held in joint tenancy, only Husband was an insured. It held that Wife never became a party to the contract and that she received coverage only in a "beneficiary" status.

¶ 5 Who is an insured under a policy of insurance is determined by the contract itself. *Babcock v. Adkins*, 695 P.2d 1340, 1342 (Okla.1985). "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application attached to and made part of the policy." Okla.Stat. tit. 36, § 3621 (1991).

■ ¶ 6 The reasoning of the Court of Civil Appeals cannot be reconciled with the terms of the insurance agreement. Husband and Wife were both insureds under the policy, Husband as the insured named on the declarations page and Wife as a spouse residing in the household. This determination is consistent with the fact that wife had an insurable interest in the property by virtue of being a spouse who resided there.

## II. USAA was Entitled to Deny Husband and Wife's Claim under the Terms of the Contract of Insurance.

¶ 7 In the "EXCLUSIONS" section of the policy, the parties agree that USAA will not insure the following:

h. Intentional Loss, meaning any loss arising out of any act committed:

(1) by or at the direction of an insured; and

(2) with the intent to cause a loss.

Also, the "CONDITIONS" section of the policy provides:

2. Concealment or Fraud. The entire policy will be void if, whether before or after a loss, an insured has:

a. intentionally concealed or misrepresented any material fact or circumstances;

b. engaged in fraudulent conduct; or

c. made false statements; relating to this insurance.

Either of these provisions provided sufficient grounds for denying the claim. As the Court of Civil Appeals observed, USAA "offered sufficient competent expert evidence to support the jury's finding" that Wife set the fire. However, that court's conclusion that Husband was entitled to policy benefits was based on its misapplication of *Short v. Oklahoma Farmers Union Insurance Co.*, 619 P.2d 588 (Okla.1980).

¶ 8 In *Short*, a husband, who was both a joint tenant and a joint insured, burned down the couple's house when the wife filed for divorce. *Short* provided two *separate* bases for precluding recovery by a spouse on a policy of insurance when the other spouse intentionally damages or destroys the insured property. One was the joint nature of the property ownership. *Id.* at 590. The other was the joint nature of the insurance coverage. *Id.*

■ ¶ 9 The *Short* opinion did not hold that both joint ownership and joint insurance must be present before coverage may be denied. Speaking only to joint coverage, this Court reasoned that "[t]o allow recovery on an insurance contract where the arsonist has been proven to be a joint insured would allow funds to be acquired by the entity of which the arsonist is a member and is flatly against public policy." *Id.* *Short* concluded that "both spouses are accountable and bound by their contractual agreements in the same manner as any other two insureds would be." *Id.* at 591.

¶ 10 The Court of Civil Appeals misapplied *Short* by requiring that the insureds be joint insureds *and* joint tenants before coverage could be denied. Joint tenancy was not required. The trial court was correct in denying Husband's motion for a new trial on his contract claim for policy benefits.

## III. USAA's Action in Tort for Fraud Entitled It to Seek Damages to Compensate for Expenses it Incurred in Investigating the Fire and Paying the Mortgage Holder.

¶ 11 In addition to denying the claim for fire loss, USAA filed this action to recover

sums it expended in investigating the fire and in paying the mortgage holder. USAA's action was a tort action for fraud. It was not based on the contract provision which allows USAA to deny the claim in cases of concealment or fraud. Specifically, the fraud action was based on false statements concerning the cause of the fire and on claims Husband submitted to USAA which it claimed were inflated, false, and a misrepresentation of the true amount of damage. The jury found for USAA in its fraud action.

■ ¶ 12    The Court of Civil Appeals has failed to appreciate that USAA did not file this lawsuit in order to deny the claim for policy benefits, contract provisions allowed it to do so. It is therefore irrelevant whether the insurance contract provided for recovery of investigation expenses and payment to the mortgage holder. USAA filed this action for fraud to recover damages it suffered as a result of the fire. These damages were incurred because coverage was sought for losses from an "accidental" fire which was actually intentionally set.

¶ 13    Husband and Wife urge that USAA may not bring a fraud action to recover its investigative expenses and mortgage payment to the loss payee. They argue that to allow such an action would violate public policy and that USAA should only be allowed to defend the contract counterclaim brought against if for policy benefits.

■ ¶ 14    This Court knows of no statement of public policy from which that conclusion can be found or inferred. In fact, article 2, section 6, of the Oklahoma Constitution requires that a "speedy and certain remedy [be] afforded for every wrong and for every injury to person, property, or reputation." Further, title 23, section 3, of the Oklahoma Statutes provides that "[a]ny person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money,

which is called damages." Section 4 of title 23 defines "detriment" as "a loss or harm suffered in person or property." Finally, in Oklahoma it is a criminal offense to present a fraudulent claim to an insurer.[1] A civil cause of action for fraud can reasonably be inferred from that provision.

¶ 15    Although research reveals no Oklahoma decision in which a fraud action brought by an insurer has been challenged,

> [i]t will be assumed in an action for fraud to recover back money paid, on the ground that the insured burned the property, that the insurer, in paying the insurance, relied as it had the right to do upon statements in the proof of loss that the fire was of unknown origin and that it was not caused by the act or procurement of the insured.

18 *Couch on Insurance* § 74:159 (citing *Hanover Fire Insurance Co. v. Furkas,* 267 Mich. 14, 255 N.W. 381 (1934)). USAA's reliance on Husband and Wife's repeated assertions that the fire was accidental caused detriment to USAA. It therefore had the right to seek damages to compensate for its losses. The trial court did not err in submitting the insurer's action for damages to the jury.

IV.   The Trial Court Did Not Err in Granting Judgment Notwithstanding the Verdict to Husband in the Absence of Proof that He Committed Fraud.

■ ¶ 16    USAA has maintained that the fraud perpetrated by Husband was in "covering up" Wife's arson and in submitting false claims which inflated and misrepresented the true amount of fire damage. In order to establish Husband's fraud USAA would have had to present either direct or circumstantial evidence that he knew his wife had intentionally burned the house or that the claims were falsely inflated.

¶ 17    USAA failed to present evidence from which fraud on his part could be demonstrated. While Husband had always main-

---

1.    Every person who presents or causes to be presented any false or fraudulent claim, or any proof in support of any such claim, upon any contract of insurance, for the payment of any loss, or who prepares, makes or subscribes any account, certificate, survey affidavit, proof of loss, or other book, paper or writing, with intent

to present or use the same, or to allow it to be presented or used in support of any such claim, is punishable by imprisonment in the penitentiary not exceeding three (3) years, or by a fine not exceeding One Thousand Dollars ($1,000.00), or both.

Okla.Stat. tit. 21, § 1662 (Okla.1991).

tained that the fire was accidental, there was nothing presented to establish that he knew his wife had set the fire. There was a want of evidence to demonstrate that Husband was a co-participant or that he had any guilty knowledge concerning the fire. In addition USAA presented no evidence that the claims did not reflect that true amount of damage. Thus, the trial court did not err in granting judgment notwithstanding the verdict to Husband on USAA's fraud claim. The jury's verdict against wife, however, remains undisturbed by this holding.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL APPEALS VACATED; TRIAL COURT AFFIRMED.

¶ 18 KAUGER, C.J., and LAVENDER, HARGRAVE, OPALA and WATT, JJ., concur.

¶ 19 ALMA WILSON, J., concurs in part, dissents in part.

¶ 20 SIMMS, J., dissents.

¶ 21 SUMMERS, V.C.J., not participating.

OPALA, Justice, concurring.

¶ 1 Although I accede to the court's pronouncement, I write separately to *explain my unqualified concurrence* in that part of today's opinion which allows the insurer to recover not only the amount of the fraudulent loss paid but also the expenses of the insurer's fraud-targeted investigation.

¶ 2 A tort can arise in the course of one's contract performance.[1] The party harmed by a tortious act or omission of another, which occurs in the latter's contract performance, may choose between a claim *ex delicto* or one *ex contractu*.[2]

¶ 3 The plaintiff-insurer had a contract claim against the insured based on fraudulent breach. *See* the provisions of 15 O.S. 1991 § 58.[3] Mrs. McCant's [insured's] proof of loss fits squarely into the cited statute's definition of *contract-related fraud:* she "suggest[ed]" untrue facts, made "positive assertion[s]" of unwarranted information and "suppress[ed]" that which was true.[4] The plaintiff-insurer *also* had a tort claim because the insured's conduct in breaching the contract constitutes a common-law delict of deceit. Insurer's choice of tort as the gravamen of its action is hence legally supportable.

¶ 4 The plaintiff's preference for tort over contract has *no effect* on the quantum of insurer's monetary recovery for investigation expenses. *The very same damages are the insurer's due in this case whether its claim be deemed actionable in contract or in tort.* The measure of insurer's contract-based damages is governed by *Hadley v. Baxendale*.[5] *Hadley*, the seminal English case

1. *Keel v. Titan Const. Corp.*, 1981 OK 148, 639 P.2d 1228, 1232.

2. *Great Plains Federal Sav. and Loan Ass'n v. Dabney*, 1993 OK 4, 846 P.2d 1088, 1093–94 n. 3 (Opala, J., concurring); *Panama Processes, S.A. v. Cities Serv. Co.*, 1990 OK 66, 796 P.2d 276, 289; *Hall Jones Oil Corporation v. Claro*, 459 P.2d 858, 861 (Okl.1969); *Morriss v. Barton*, 200 Okl. 4, 190 P.2d 451, 457 (1948); *Oklahoma Nat. Gas Co. v. Pack*, 186 Okl. 330, 97 P.2d 768, 770 (1939) (quoting 1 R.C.L. 321); *Owens v. State*, 133 Okl. 183, 271 P. 938, 942 (1928); *Chicago, R.I. & P. Ry. Co. v. Harrington*, 44 Okl. 41, 143 P. 325, 327 (1914); *Hobbs v. Smith*, 28 Okl. 556, 115 P. 345, 350 (1911).

3. The terms of 15 O.S.1991 § 58 are:

Actual fraud, within the meaning of this chapter [contract], consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:
1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true.
2. The positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true.
3. The suppression of that which is true, by one having knowledge or belief of the fact.
4. A promise made without any intention of performing it; or,
5. Any other act fitted to deceive.

4. *See id.*

5. *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng.Rep. 145 (1854); *see Florafax Intern., Inc. v. GTE Mkt. Resources, Inc.*, 1997 OK 7, 933 P.2d 282, 292.

which is the law in Oklahoma, holds that the non-breaching party may receive, *in addition to any other damages that were within the contemplation of the parties at the time of the contract's making,* only the value of the contract lost as a result of the breach.[6] The Restatement (Second) of Contracts expresses the same measure in § 351.[7]

¶5 More encompassing than contract damages, tort reparations include compensation for all proximately caused harm, whether foreseeable or not.[8] The wrongdoer is liable *ex delicto* for the whole loss occasioned by the offending act or omission[9] and must place the harmed party in the same position as that which it occupied before the tort occurred.[10]

¶6 Measured by these standards, the investigation expenses *in this case* are recoverable under both theories. When purchasing the policy the insured should have foreseen that a thorough investigation would follow the insurer's receipt of a proof of loss that bore the earmarks of fraud. *Hadley,* the Restatement (Second) and Oklahoma jurisprudence all lend support to the insurer's *ex contractu* recovery of investigation costs. If, on the other hand, tort standards were to be applied, the insurer cannot be made whole *sans* recovery of the same costs. *But for* the insured's fraudulent demand, the insurance company would not have been required to expend $31,499.49[11] to determine that its payment of indemnity was rested on the insured's deceit. In order to restore the insurer to its pre-harm position, that much and no less is the insurer's due under the tort theory.

¶7 The insurer's remedy was neither confined in this case to contract law nor to *ex contractu* recovery of the fraudulent loss paid. There was *no error* in the insurer's choice of tort as the gravamen of its claim. Extant jurisprudence firmly supports the insurer's *ex delicto* recovery of expenses incident to uncovering the insured's fraud.

---

6. *William v. Roth, Tort Liability for Bad Faith in Montana: The End of the Story,* 57 Mont.L.Rev. 567, 568–6 (1996). *Hadley* demonstrates a laissez-faire industrialist influence by allowing "efficient breach"—a special exception to tortious damages. *Id.* (citing *Richard Danzig, Hadley v. Baxendale: A Study in the Industrialization of the Law,* 4 J. Legal Stud. 249, 259–60, 264–65 (1975).)

7. Restatement (Second) Of Contracts § 351 states in pertinent part:
    (1) Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made.
    (2) Loss may be foreseeable as a probable result of a breach because it follows from the breach
    (a) in the ordinary course of events, or
    (b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know.

8. The terms of 23 O.S.1991 § 61 provide:

"For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the *amount which will compensate for all detriment proximately caused thereby,* whether it could have been anticipated or not." [Emphasis supplied]

9. The provisions of 76 O.S.1991 § 2 are:

"One *who willfully deceives another,* with intent to induce him to alter his position to his injury or risk, *is liable for any damage which he thereby suffers.*" [Emphasis supplied]
*Denco Bus Lines, Inc. v. Hargis,* Okl., 204 Okla. 339, 229 P.2d 560, 562 (1951).

10. *LeFlore v. Reflections of Tulsa, Inc.,* 1985 OK 72, 708 P.2d 1068, 1076; Restatement (Second) Of Torts § 549.

11. The plaintiff paid the insured's mortgage holder $41,722.64 under the loss payable clause of the policy and *incurred $31,499.49 in investigation costs.*